[Civ. No. 24917. First Dist., Div. Two. Dec. 18, 1967.]

CALIFORNIA STATE AUTOMOBILE ASSOCIATION INTER-INSURANCE BUREAU, Plaintiff and Respondent, v. BARRETT GARAGES, INC., Defendant and Appellant.

Nicholas G. Schoonbrood for Defendant and Appellant.

H. Kelly Ogle and Keil & Connolly as Amici Curiae on behalf of Defendant and Appellant.

Marquart & Bahre and M. G. Bahre for Plaintiff and Respondent.

AGEE, J.—Plaintiff is the subrogee of three automobile owners who left their cars at the San Francisco International Airport parking lot in the care of "Parking Valet Service," operated by defendant, Barrett Garages, Inc.

Upon return from their respective plane trips it was discovered that the cars had been stolen. After reimbursing each owner for his loss, as provided in its insurance policies issued to such owners, plaintiff filed suit in municipal court against defendant to recover the amounts so paid. The three actions, numbered 11145, 13912, and 13930, were consolidated for trial and plaintiff recovered judgments of $1,335, $650, and $850, respectively.

These judgments were affirmed by the Appellate Department of the Superior Court in San Mateo County. We accepted certification under rules 62 and 63 of the California Rules of Court.

Since written findings of fact by the municipal court were waived by the parties (Code Civ. Proc., § 632) and every intendment is in favor of the judgments, it will be presumed that the trial court in effect found all of the facts necessary to support such judgments. (*Annin* v. *Belridge Oil etc. Union,* 119 Cal.App.2d Supp. 900, 906 [260 P.2d 295]; *Mastrofini* v.

*Swanson,* 114 Cal.App.2d Supp. 848, 849-850 [250 P.2d 764].)

No contention is made on appeal that the evidence is insufficient to support the implied finding of defendant's negligence. Defendant bases its defense against liability on the provisions printed on the claim check given to each motorist at the time of leaving his car, a facsimile of which is as follows:

CLAIM CHECK No. 00813

**S.F. International Airport**
PARKING VALET SERVICE

**$1.25** *PLUS STORAGE*

THIS CONTRACT LIMITS OUR LIABILITY — READ IT

No Cars Delivered Without This Check

Customer and Company agree: All claimed damage or loss must be reported and itemized by customer to manager in writing before vehicle is taken from the delivery area, after loss occurs and if not so made is waived. Company has option to make repairs of any claimed damage, at its own expense, such option to be exercised within 48 hours after filing of claim. Court actions by customer for any claims must be filed within 90 days from date of parking, in court of jurisdiction where claimed loss occurred. In all court actions burden of proof to establish claim remains with customer. Company not responsible for damage by fire, theft or defective brakes or parts, or for loss or theft of accessories or articles left in the vehicle. Total liability of Company limited to $250.00 for all damages or loss to customer. Company not responsible for loss of use. Customer must set brake before leaving vehicle. This is the entire contract and no employee can modify it. It is not assignable. Customer waives all laws in conflict with the foregoing.

No Cars Delivered Without This Check

The facts in each case are essentially identical. The owner drove into the parking lot and left his car with an attendant to park and store for the duration of his plane trip. He was given a claim check by the attendant, which he put in his pocket and then headed for the terminal building. There was no mention of the provisions printed on the claim check or of any signs posted on the lot. The motorist did not read or know anything about any provisions restricting the liability of the bailee. His understanding was that the only purpose of the claim check was to identify his car so that he could regain its possession upon his return.

*Effect of Code of Civil Procedure, Section 448*

This section was repealed, effective September 17, 1965 (Stats. 1965, ch. 105, p. 1046), and defendant's contention thereunder is limited to action 11145, wherein the defendant's answer was filed *prior* to the effective date of such repeal. The answers in the other two actions were filed after said date.

Said section provided: "When the defense to an action is founded upon a written instrument, and a copy thereof is

contained in the answer [which it was], or is annexed thereto, the genuineness and due execution of such instrument are deemed admitted, unless the plaintiff file . . . an affidavit denying the same. . . ." No such affidavit was filed.

■ Defendant argues that plaintiff thereby became bound by the terms of the claim check. This is not the law.

Except for genuineness and due execution, plaintiff could attack the claim check on any other grounds. (*Miller* v. *McLaglen,* 82 Cal.App.2d 219, 225 [186 P.2d 48]; *Wilson* v. *McCormick S.S. Co.,* 38 Cal.App.2d 726, 729-730 [102 P.2d 412]; *Gajanich* v. *Gregory,* 116 Cal.App. 622, 630 [3 P.2d 389].)

"He could controvert the instruments by evidence of fraud, mistake, undue influence, mental incapacity, want of consideration, failure of consideration, compromise, estoppel, that they were void because not fairly made or fully comprehended; . . ." (*Miller* v. *McLaglen, supra,* p. 225; *Moore* v. *Copp,* 119 Cal. 429, 432 [51 P. 630].)

In the instant case plaintiff can challenge the *creation* of a contract containing the provisions printed on the claim check, although admitting that a replica of such claim check was delivered to each of the three motorists in question.

Defendant cites *Ward* v. *System Auto etc. Garages, Inc.,* 149 Cal.App.2d Supp. 879 [309 P.2d 577], decided by the Appellate Department of the Superior Court in and for Los Angeles County.

In that case plaintiff recovered a money judgment against defendant for damage to his automobile while it was parked with defendant. Defendant set forth *in haec verba* in its answer to plaintiff's complaint a written contract of bailment, which contained a provision limiting the period for bringing an action to three months.

The trial court found that this purported contract " 'was never entered into by any of the parties herein.' " The majority opinion states that "We are reversing the judgment because the trial court was not at liberty to make any such finding; . . ." (P. 880.)

This ruling is based entirely upon the majority's erroneous interpretation of the legal effect of not filing an affidavit under Code of Civil Procedure, section 448. This is made doubly clear by the majority's statement made upon denial of a rehearing. This statement is as follows: "By failing to file

affidavit, there was no issue of fact (that there was no contract)." (P. 884.)

The dissenting opinion of Judge Swain sets forth the rule correctly, as follows: "The failure of the plaintiff to file an affidavit under Code of Civil Procedure, section 448, admits only that the copy of the parking ticket alleged in the answer is a correct and genuine copy of the one issued to the plaintiff by the defendant. *It does not admit its legal effect or that it is a contract.*" (P. 882; italics added.)

"We should recognize the fact that a trier of the facts could hold that a prudent man may consider a parking ticket merely as a means of identifying his car when he claims it." (P. 884.)

### *Was a Contract Created As a Matter of Law?*

 It is essential to the existence of a contract that there be mutual consent. (Civ. Code, § 1550, subd. 2.) Here, there was no discussion with the motorist as to the provisions on the claim check and he had no knowledge of them.

The situation is similar to that of one who deposits his money with a bank and receives a passbook which shows receipt of the money. He is not bound by a form of agreement printed in the passbook respecting nonliability of the bank as to forged or altered checks and endorsements when he did not sign such agreement and its terms were not called to his attention. It was held that such a provision was a "trap for the unwary" and unenforceable. (*Los Angeles Inv. Co.* v. *Home Sav. Bank,* 180 Cal. 601, 612-613 [182 P. 293, 5 A.L.R. 1193].)

In this cited case, the Supreme Court stated, at page 613: "This statement [in the passbook] is not signed by the plaintiff, nor is there any showing that it was called to the plaintiff's attention or wittingly agreed to by it. It is just the character of thing that the average man would not trouble to read, . . ."

 However, the general rule is that a person is bound by the printed contractual provisions of an instrument which he accepts delivery of *if,* as an ordinarily prudent man, he could and should have read such provisions. (*Hischemoeller* v. *National Ice etc. Storage Co.* (1956) 46 Cal.2d 318, 323 [294 P.2d 433].).Obviously, this presents a question of fact.

In *Merrill* v. *Pacific Transfer Co.,* 131 Cal. 582 [63 P. 915], the holder of a baggage check obtained a $950 judgment against the defendant transfer company for the loss of a

trunk and its contents. The baggage check contained a provision limiting the transfer company's liability to $100. Plaintiff did not read this provision or have any actual knowledge of it.

His conduct was described in the opinion as follows: "He was familiar with the usual method of the transaction of the business of the transfer company, had traveled a good deal, and had always been in the habit of giving his checks to and taking a receipt from the agent of the transportation company. It was light enough to read. There was time enough for him to have read the printed portion, but he could not with certainty have done so without using his eyeglasses. He did not, however, think to read it, nor attempt to read it. He put the receipt in his pocket. He does not recollect that he ever read the printed portion of any receipt. He read the printed portion of this one only after the trunk was lost. He did not know that there were conditions on the receipt. He regarded it merely as a receipt, as the only thing he had to connect him with his baggage." (P. 586.)

It was held that if plaintiff had *constructive* notice or knowledge of the $100 limitation provision this was sufficient to bind plaintiff and that the trial court erred in refusing to so instruct the jury. The Supreme Court cited and relied upon Civil Code, section 19, which provides: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact."

A new trial was ordered on the ground that "it was with the jury [trier of fact] to say whether under all the circumstances, as disclosed by the evidence, Mr. Merrill [plaintiff] had the actual or constructive notice or knowledge contemplated by the law." (P. 589.)

*Curtis* v. *United Transfer Co.*, 167 Cal. 112 [138 P. 726], cites and follows *Merrill.* That was an action against a transfer company to recover damages for the loss of a trunk, in excess of the sum stated in the receipt given therefor limiting the liability of the defendant. The opinion holds that it is a question of *fact* for the jury, *not* one of *law* for the court, to determine whether the plaintiff accepted the receipt with actual knowledge of its terms, or under such circumstances as constituted constructive knowledge in contemplation of law.

The *Curtis* opinion states: "The controlling question is,

Was there an acceptance [of the receipt] with knowledge of the terms of the limitation of liability? This is to be determined not merely from acceptance but from a consideration of all of the circumstances, including acceptance, surrounding the transaction between the parties at the time the receipt was given and taken. From these it is for the jury to determine whether the plaintiff had actual knowledge that the paper was a contract when she received it or if not, whether the circumstances under which she received it were such as put her on notice of the contents of the instrument-constructive notice or, as that term imputes, knowledge implied by law.'' (167 Cal., at pp. 115-116.)

In the instant case defendant relies upon *Cunningham* v. *International Committee of Y.M.C.A.,* 51 Cal.App. 487 [197 P. 140]. In that case the plaintiff left a suitcase for storage with defendant, a charitable organization acting in this instance as a gratuitous bailee. Plaintiff was given a claim check bearing a number and, among other things, the printed words: ''The article checked on this check is left with the Association at owner's risk. . . .'' The suitcase could not be found when plaintiff returned for it.

Judgment for plaintiff was reversed by the appellate court on the ground that ''There is no testimony that plaintiff did not read this receipt and have actual knowledge of its contents.'' (P. 490.) It was therefore held that plaintiff ''is *presumed* to have assented'' to such contents. (P. 490; italics added.)

The court pointed out that ''there is no evidence in the record of any negligence on the part of the defendant'' and that the public policy question as to contracts by which a bailee seeks to release itself from its own negligence was therefore not involved. (P. 491.)

In the instant cases the trial court's implied finding of defendant's negligence is not challenged and the testimony is undisputed that the respective bailors did not read the provisions on the claim check and had no knowledge of them.

Defendant cites an unpublished superior court appellate department opinion, *Reimer* v. *Jack Tar Hotel,* San Francisco No. 2797, which holds that ''a writing [auto claim check] appearing on its face to be a contract, delivered by one party to another, and accepted without objection, constitutes a contract.''

*Reimer* cites and relies upon *Ward, supra,* saying that it

"is practically on all fours with the instant case, upholding the validity of the claim check as a contract, as well as the 90 day limitation."

As we have seen, in *Ward* the majority opinion was based upon an erroneous interpretation of section 448 of the Code of Civil Procedure, which issue was not involved in *Reimer*.

To the extent that these two decisions may be inconsistent with or contrary to our opinion herein, they are disapproved.

■ We hold that the delivery of a claim check to the respective bailors herein did not create a contract embodying the matter printed thereon as a *matter of law*. Under the particular circumstances, *a question of fact* was presented in each case as to whether there was the necessary consent by said bailors to be bound by such contractual provisions, as required by Civil Code, section 1550.[1]

In other words, the crucial question to be determined by the trier of fact in each case is whether the particular circumstances are such that a prudent man, acting reasonably, would or would not have read the exculpatory provisions in question. (*Hischemoeller* v. *National Ice etc. Storage Co., supra,* 46 Cal.2d, at p. 323.)

### *Effect of Civil Code, Section 1630*

■ This section was enacted in 1957. The first paragraph thereof provides as follows: "*No* printed contract of bailment providing for the parking or storage of a motor vehicle *shall be binding,* either in whole or in part, on the vehicle owner or on the person who leaves the vehicle with another, *unless* the contract conforms to the following:" (Italics added.)

We regard this provision as meaning that any such purported contract is void and of no effect unless each of the conditions specified in said section is complied with. (See 32 State Bar J., p. 513.)

■ One of such conditions is as follows: "A copy of the contract printed in large type, in an area at least 17 by 22 inches, shall be posted in a conspicuous place at each entrance of the parking lot." This condition was not complied with.

Upon entering the parking lot the motorist is required to

---

[1]In view of this holding, we believe that it is not necessary to discuss the application of the rule applicable to standardized adhesion contracts of exculpation. (See *Tunkl* v. *Regents of University of California,* 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693]; *Steven* v. *Fidelity & Cas. Co.,* 58 Cal.2d 862 [27 Cal.Rptr. 172, 377 P.2d 284].)

drive upon a ramp until he reaches the point where he stops, which is usually behind the car stopped ahead of him. He then awaits the appearance of an attendant who comes to his car, gives him a claim check, and drives the car away. The motorist then proceeds on foot to the nearby terminal building.

Running parallel to this ramp is a cement platform raised approximately 6 to 8 inches above the level of the ramp. Located on this platform is a structure described as a "valet station," about the size of a telephone booth, where claim checks are kept and obtained by the attendants as needed.

· The opening to this station faces the ramp. On each side of the booth are signs of a *size* which comply with the statute. They are attached to the lower halves of said sides and are below the eye level of a motorist positioned behind the steering wheel of his car. Similar signs are posted near the cashier's booth on the lower ramp, where the motorist goes to reclaim his car when he returns from his trip. (There is no contention these two signs have any bearing upon the issue under discussion.)

The exact distance from the parking lot entrance to the sign on the side of the "station" booth nearest the entrance was not testified to by any witness.

However, one of the three motorists involved herein testified that he stopped his car behind a line of cars and that he was then 100 to 150 feet from the station. His car remained in this position until the attendant appeared and gave him a claim check. He then got out and walked to the terminal building. The other two motorists departed from their cars at about the same point.

We know from this testimony and the photographs in evidence that the distance from the place where the three motorists involved herein turned over their respective cars to defendant's attendants is approximately 100 to 150 feet from said station.

Moreover, even if it be held that defendant sufficiently complied with the condition as to the posting of a copy of the alleged contract, we do not believe that the Legislature intended that such compliance would ipso facto create a contract between the parties and afford the operator of a public parking lot a complete defense to an action by a motorist-bailor, whose car was stolen through the negligence of such operator.

This is evident from the concluding paragraph of section 1630, which provides that cities may enact ordinances on the same subject matter so long as such ordinances are not *less restrictive* than section 1630. Obviously, the Legislature did not contemplate that the car lot operator's liability was to be limited to a compliance with the provisions of section 1630.

### Damages

Defendant contends that the respective amounts of the damages awarded herein are not supported by competent evidence, but are based upon "conjecture and surmise." However, it concedes that such amounts should be sufficient to "compensate for all the detriment proximately caused" by its negligence. (Civ. Code, § 3333.)

In the first action, number 11145, the owner testified that the reasonable value of his 1959 Impala sedan, on the date of the theft, March 20, 1963, was $1,400. This testimony is competent to prove value. (Witkin, Cal. Evidence (1958) p. 361.) Plaintiff's expert witness agreed with the owner's valuation and plaintiff paid said amount to the owner.

Seven dismantled pieces of this car were later found and sold by plaintiff for $65. An expert testified that the amount so recovered for such salvage represented its reasonable value. The amount of the judgment was $1,400 less $65, or $1,335.

In the second action, number 13912, the owner testified that the value of his 1961 Dodge Lancer, on the date of the theft, June 22, 1963, was "In the neighborhood of $2,000." Plaintiff's expert testified to a value of $1,675 and the owner accepted this sum from plaintiff on August 2, 1963 in full settlement.

On August 29, 1963, plaintiff was notified that the Lancer had been recovered. Plaintiff sold it to the highest bidder in its then condition for the sum of $995. An expert established that this was the highest amount that could be obtained for it. The amount of the judgment was $650. It cannot be ascertained from the record why this amount should not have been $680, but defendant was benefited by what was probably a mathematical miscalculation by the court.

In the third action, number 13930, the owner testified to a value of $1,200 for her 1959 MG sports coupe and loss of use in the sum of $218.38 during the period between the theft and her purchase of another car. Plaintiff paid her these amounts.

On February 14, 1964, over five months after the theft, the

car was located at San Bruno. It was towed to San Francisco, where it was repaired and cleaned, at a total cost of $88.69.

The MG was then exhibited to potential buyers and sold for $650, which was the highest bid obtainable. Judgment of $850 was rendered in favor of plaintiff, which was less than the total amount of the damages shown.

The procedure followed by plaintiff in dealing with its insureds was the same in each case. There was a 30-day waiting period within which it was hoped that the car would be found. When that period expired a settlement was made with the insured and the latter executed a bill of sale of the car to the plaintiff. Thereafter, plaintiff salvaged whatever it could if the stolen car in question, or what was left of it, was found.

We conclude that the amount of damages proximately caused by the thefts in question was sufficiently proven, as reflected in the three judgments involved herein.

Judgments affirmed.

Shoemaker, P. J., and Taylor, J., concurred.

A petition for a rehearing was denied January 17, 1968.