[Civ. No. 14869.   Second Dist., Div. Three.   Sept. 21, 1945.]

LESTER A. FITCH et al., Respondents, v. WILLIAM L. CARPENTER, Appellant.

W. L. Carpenter, in pro. per., for Appellants.

Arthur C. Webb for Respondents.

SHINN, J.—Plaintiffs recovered a judgment in the sum of $1,950 as damages suffered in the loss of their household goods which defendant W. L. Carpenter, doing business under

the firm name and style of Argonne Van Lines and Argonne Van and Storage Company, a common carrier, undertook to transport from Mill Valley, California, to Los Angeles. The complaint alleged the contract of carriage, the payment of defendant's charges in the sum of $173.61, that defendant represented to plaintiffs that all goods carried by him were fully covered by insurance against loss by fire; that they were induced thereby to enter into the contract of carriage with him, that defendant was negligent in the handling of the goods, and that the goods were thereby wholly lost through fire while in possession of defendant. In a separate cause of action plaintiffs alleged breach of the contract of carriage by failure to deliver the goods as agreed, and in the third cause of action it was sought to recover the sum paid for the transportation charges. The goods were alleged to be of the value of $4,239.50.

In addition to denials, the answer alleged that plaintiffs instructed defendant to set the goods off at San Francisco until notified by plaintiffs that they were ready to accept delivery thereof; that this instruction was followed; that the goods were destroyed by fire while so set off, and it alleged the making of a special contract of carriage, by the terms of which defendant's liability was limited to a sum equal to ten cents per pound for the weight of the goods shipped, amounting in the aggregate to $528. The agreement pleaded by defendant as a limitation upon his liability consisted of a provision in a bill of lading that the value of the property did not exceed ten cents per pound. Floyd Fitch, 16-year-old son of plaintiffs, signed his own name to this declaration of value in the bill of lading. Plaintiffs filed an affidavit denying the authority of their son to enter into an agreement on their behalf and the due execution by them of the alleged agreement limiting defendant's liability.

The court found the allegations of the complaint to be true, with the exception of the amount of plaintiffs' damage, which was fixed at $1,950. It was further found that plaintiffs did not execute the bills of lading and did not authorize their son to execute the same on their behalf and that they did not authorize the stopping of said goods in transit at San Francisco nor the unloading thereof by defendant. Although by finding the allegations of the complaint to be true the court found that defendant represented the goods to be covered by

insurance, and was negligent in the handling of them, these findings are immaterial; the other facts found furnish a sound basis for the judgment.

Plaintiffs arranged for the shipment of their goods at defendant's San Francisco office during the week preceding January 4, 1943. They were present while the goods were being loaded at their home in Mill Valley on January 4, 1943. Shortly before defendant's van left, and while plaintiffs were in the house, their son Floyd Fitch, at the request of one of defendant's employees, affixed his own name to a bill of lading as the owner of the property and after the van left he told plaintiff Lester A. Fitch that he had signed some paper. No copy of the bill of lading was furnished to plaintiffs or their son at the time. After the van left, plaintiffs drove to San Francisco on their way to Los Angeles, paid defendant his charges of $173.61, received a receipt therefor, and requested a copy of the bill of lading. They were told that it would be mailed to them but this was not done and they had no knowledge as to its contents. The evidence was that the son had no authority to make any agreement for them and that they did not believe that he had affixed his name to anything more than a receipt which evidenced delivery of the goods. Plaintiffs denied that they had authorized the stoppage of the goods in transit or given any directions other than for their transportation directly to Los Angeles. There was evidence that it was defendant's custom to bring small loads of goods to his dock in San Francisco and to unload them there for the purpose of transfer to a larger van, thus combining the shipments of several owners into a single load for a long haul. This was done with the goods of plaintiffs. The dock was destroyed by fire, the cause of which was undisclosed. and plaintiffs' goods were thereby lost.

Defendant, who is appearing in propria persona, lists sixty-five points of law or fact which, when assembled, constitute his argument that plaintiffs entered into a special contract for the shipment of their goods and are bound by the limitation of liability therein declared. He contends that the court should have held plaintiffs to the agreement on the theory that their son had authority to make it or upon the grounds of ratification and estoppel. There was no evidence that the son had authority to act for plaintiffs or that they held him out as their agent. The uncontroverted evidence was that

plaintiffs were present in their home at the time the loading was completed and that nothing was said to them concerning the issuance by defendant of a bill of lading. The finding that they did not execute the special contract is sustained by the evidence. The finding that plaintiffs did not ratify the act of their son is also supported by the evidence. They did not know he had signed a bill of lading; it was not furnished to them, although they asked for it, and the goods were destroyed on the following day. ▉ Being without knowledge of what their son had signed, plaintiffs did not ratify his act nor could they be held estopped under the circumstances to deny his authority.

There are no questions of law in the case which have not been decided contrary to appellant's contentions. ▉ Unless limited by the special contract, his liability was that of an insurer. (*American Fruit Distributors* v. *Hines* (1921), 55 Cal.App. 377, 385 [203 P. 821].) It was held in *McQueen* v. *Tyler* (1943), 61 Cal.App.2d 263 [142 P.2d 466], that a contract purporting to limit the liability of a carrier is not binding upon the shipper unless it is entered into freely and fairly, citing *Donlon Bros.* v. *Southern Pacific Co.* (1907), 151 Cal. 763 [91 P. 603, 12 Ann.Cas. 1118, 11 L.R.A.N.S. 811]. Although the shipper there had signed a freight bill which contained a limitation of liability similar to the one here involved, a finding of the jury that it did not constitute a contract fairly entered into by the parties limiting defendant's liability was held to be sustained by evidence that it was signed by the shipper upon a representation that it was an authorization to take the goods and without reading the paper and without knowledge that it contained a provision purporting to limit the liability of the carrier. ▉ Section 2176 of the Civil Code provides that the acceptance of a bill of lading by a consignor with knowledge of its terms constitutes an assent to a limitation of liability as to property carried in packages, trunks or boxes when the value is not stated, but that the consignor's consent to any other modification of the carrier's obligation contained in such instrument can be manifested only by his signature of the same. The court found, upon sufficient evidence, that plaintiffs did not accept a bill of lading and that they did not execute one. The provisions of section 2176, *supra*, are therefore not available to defendant as a ground for limitation of his liability.

Defendant makes the further contention that plaintiffs elected to ship their goods at the rate applicable to a valuation of ten cents per pound and that they thereby necessarily limited his liability. The court found that plaintiffs did not make such an election. The finding is supported by the evidence. There was no evidence that plaintiffs had any knowledge that the sum charged by defendant was at the rate fixed for the shipment of goods at a valuation of ten cents per pound, nor was there any evidence that they had any knowledge whatever as to the basis of defendant's rates.

Not having entered into or even discussed any agreement or arrangement to limit defendant's liability, they had a right to assume that defendant was undertaking to transport the goods at their true value and that he was charging his customary rate therefor. Although defendant's tariffs had been filed with and approved by the Railroad Commission and the charges which he made were in accordance therewith, and were applicable to the shipment of goods at a valuation not to exceed ten cents per pound, the payment by plaintiffs of the minimum rate did not constitute an agreement upon their part to a limitation of defendant's liability. That is a matter of contract and is governed by section 2176 of the Civil Code.

Defendant makes the further argument that the finding that the goods were worth $1,950 results in his having agreed to ship goods of that value at a rate applicable to goods of far less value, that this would have amounted to giving plaintiffs a preferential rate, which the law does not allow, and that out of these facts there arose an implied agreement limiting the value of the goods so as to conform to the rate charged. Plaintiffs had no knowledge that they were receiving any preference. They were not shown to have been unwilling to pay a higher rate if it had been charged by defendant, and they cannot be held responsible for defendant's omissions or mistakes. The argument that as plaintiffs had the benefit of the lower rate they should bear the consequences which followed the acceptance of that rate is without force, inasmuch as there was no evidence that they had any knowledge that defendant's charges were based upon a restricted liability.

There was ample evidence to sustain the finding as to the value of plaintiffs' goods; indeed a finding of a considerably higher value would not have been unjustified.

The contention that the court was guilty of an abuse of discretion in allowing plaintiffs to file an affidavit denying the genuineness and due execution of the bill of lading after the expiration of five days from the filing of defendant's answer setting up the bill of lading is without merit. The record contains nothing to indicate that the order was not based upon valid grounds and a sufficient showing.

The judgment is affirmed. The attempted appeal from the order denying motion for new trial is dismissed.

Desmond, P. J., and Wood (Parker), J., concurred.