# AMERICAN EXPRESS COMPANY *v.* UNITED STATES HORSE SHOE COMPANY.

## ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.

No. 248.    Argued April 30, 1917.—Decided May 21, 1917.

Concurrent findings of state trial and appellate courts as to the fact of negligence will not be overturned by this court in the absence of clear error.  *Baltimore & Ohio R. R. Co.* v. *Whitacre*, 242 U. S. 169.

A carrier's printed form of contract for interstate transportation of livestock, plainly intending to adjust the rates in each case proportionately to valuations to be made by the shipper which should limit the carrier's liability, specified minimum or primary valuations for various kinds of animals with corresponding tariff rates and left blanks for insertion of the shipper's valuations connected with the statement that the same were declared by the shipper in order to avail himself of the alternative rates.  In a case where the blanks for valuations by the shipper were left unfilled at execution but the rate charged and inserted in the contract was in accordance with the carrier's tariff as applied to the primary valuations, *Held* that these

were the valuations adopted by the parties and that the carrier's liability was limited accordingly.

Failure to post rates which are duly made out and filed with the Interstate Commerce Commission does not affect their validity or the duty of a shipper to take notice of them.

A clause in a carrier's merchandise rate schedules providing that rates there must not be applied to livestock shipments, *construed* as intended to leave the provisions of the livestock schedule concerning rates and valuations for independent interpretation uninfluenced by provisions in the merchandise schedules.

The effect of a contract made and signed by a shipper in lawful accord with established rate sheets may not be avoided by the suggestion that through neglect or inattention he did not read it.

250 Pa. St. 527, reversed.

THE case is stated in the opinion.

*Mr. Charles F. Patterson,* with whom *Mr. Francis R. Harbison* was on the brief, for plaintiff in error.

*Mr. W. Pitt Gifford* for defendant in error.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

The subject-matter of this suit is the liability, if any, of the plaintiff in error, the Express Company, for the failure to safely deliver a colt which was entrusted to it by the agent of the defendant in error at Milwaukee, Wisconsin, for transportation to Erie, Pennsylvania, and if there was any liability, the amount thereof. The controversy is here to review the action of the court below in affirming a judgment of the trial court rendered on a verdict of a jury finding that there was liability and fixing the amount at $1,916.70. 250 Pa. St. 527. Jurisdiction to review rests upon the interstate commerce character of the shipment involving various alleged misconstructions of the Act to Regulate Commerce and conse-

quent deprivation of federal rights asserted to have arisen from the course of the trial in the court of first instance as also from the action of the court below in affirming. These contentions in the courts below concerned both the existence of liability and, if any, the amount. As the result, however, of the conclusion of both courts as to the fact of negligence and the absence of any ground for clear conviction of error on the subject (*Great Northern Ry. Co. v. Knapp*, 240 U. S. 464, 466; *Baltimore & Ohio R. R. Co. v. Whitacre*, 242 U. S. 169), as well as because of the limitations resulting from the errors assigned and relied upon, the question of liability may be put out of view, thus reducing the case to a question of the amount, and that turns on whether there was a limitation of liability and the right to make it.

The printed form of contract (express receipt) which was declared on and made a part of the complaint contained a caption under a title "Notice to Shippers" directing their attention to the fact that they must value their property to be shipped and that the charges for transportation and the sum of recovery in case of loss would be based upon valuation. The contract itself was entitled "Limited Liability Live Stock Contract." Its first clause described the carriage which was to be provided for with appropriate blanks to enable the insertion of the livestock which it covered and the rate to be paid for the service with a proviso that the charge was based upon valuation fixed by the shipper. The second clause stated a demand by the shipper for rates to be charged for the carriage and that he was offered "by said Express Company alternative rates proportioned to the value of such animals, such value to be fixed and declared by the shipper, and according to the following tariff of charges, viz:" This was followed by clause 3 which contained enumerations of various classes of animals fixing a primary valuation for each class, for instance: "For . . . horses . . . $100."

"For . . . colts . . . $50." The fourth and fifth clauses provided that after ascertaining the rate to be charged for all classes of animals embraced in clause 3 by applying to those classes the rate provided by the tariff sheets filed according to law with the Interstate Commerce Commission, there should be added to such rate a stated percentage of the amount by which the declared valuation of the shipper exceeded the primary valuation fixed by the terms of clause 3. The fifth clause also concluded with the declaration that the shipper, in order to avail himself of the alternative rates, had declared a value as follows, and contained blanks for the insertion of said valuation.

There was filled in this blank contract, as signed by the parties and as sued on, in the first clause a statement of the animals shipped, a mare and colt, and of the rate, $75. In the third clause containing the enumeration of classes, in the class as to horses valued at $100 there was written "$100" and in the class as to colts valued at $50 there was written "$50." There was no filling of the blank at the end of the fifth clause stating the owner's valuation and that space therefore remained vacant.

There was evidence tending to show that the shipper was experienced in shipping horses and was informed of the right to value and that the rate as well as the recovery would depend upon valuation. Evidence was also admitted over objection of the company tending to show that the shipper was unaware of the valuation clauses and that he signed the contract without reading it. There was further evidence that on the contrary the shipper was fully informed by the agent and declared his purpose to fix the primary valuation and not to exceed it. In addition, evidence was tendered by the defendant which was rejected and objection reserved, tending to show that in consequence of the desire of the shipper not to change the primary valuation, that is to adopt the same, the figures

written into the clauses of·§ 3 of $100 as to the mare and $50 as to the colt, were written by the agent inadvertently in the wrong place, intending to write them at the space left vacant for the shipper's valuation at the end of clause 5, and that for the same reason the rate charged was based on the tariff as applied to the primary valuation as stated in the third·clause of the contract.

Putting out of view the conflicting tendencies of the proof and looking at the subject-matter from the point of view of the contract, that it was one intended to limit liability, or in other words, to fix a rate according to value at the shipper's election and to regulate recovery in case of loss correspondingly, would seem too clear for anything but statement. It is true the intimation is conveyed in the argument that the alternative rate depended exclusively upon the making of a valuation by the shipper and that where this was not done, there was no valuation and no limitation and a consequent limited rate and unlimited liability. But the suggestion disregards the stating of a value in the different clauses of § 3 which are susceptible of no other explanation than that they were intended as a primary value to control as the basis for fixing the rates and as a rule of limitation if the shipper did not by making ·another and increased value become liable for a higher rate and possess the right to a greater recovery. To adopt the suggestion would require a disregarding of the plain terms of the contract and would leave no basis upon which to explain the rate fixed which clearly rested upon the tariff as applied to the articles and the statement as to value fixed in the third clause.

That it was in the power of the carrier under the Act to Regulate Commerce as amended to limit liability even in case of negligence by affording the shipper an opportunity to pay a higher rate and secure a higher recovery than the one initially fixed by the carrier, is so conclusively settled as to be beyond controversy. *Adams Express*

*Company* v. *Croninger*, 226.U. S. 491; *Kansas City Southern Ry. Co.* v. *Carl*, 227 U. S. 639; *Missouri, Kansas & Texas Ry. Co.* v. *Harriman*, 227 U. S. 657; *Chicago, Rock Island & Pacific Ry. Co.* v. *Cramer*, 232 U. S. 490; *Great Northern Ry. Co.* v. *O'Connor*, 232 U. S. 508; *Boston & Maine R. R.* v. *Hooker*, 233 U. S. 97; *Atchison, Topeka & Santa Fe Ry. Co.* v. *Robinson*, 233 U. S. 173; *Louisville & Nashville R. R. Co.* v. *Maxwell*, 237 U. S. 94; *Pierce Company* v. *Wells, Fargo & Company*, 236 U. S. 278; *Cincinnati, New Orleans & Texas Pacific Ry. Co.* v. *Rankin*, 241 U. S. 319; *New York Central & Hudson River R. R. Co.* v. *Beaham*, 242 U. S. 148.

These rulings are decisive unless it be that for some reason they are inapplicable, and we briefly consider separately the grounds relied upon as demonstrating that result.

It is said the rate sheets filed with the Interstate Commerce Commission if they sustained the contract were not posted and therefore the contract must be treated as having nothing to rest upon. But the proposition is adversely disposed of by several of the cases above cited. *Kansas City Southern Ry. Co.* v. *Carl*, 227 U. S. 639, 652; *Boston & Maine R. R.* v. *Hooker*, 233 U. S. 97, 111; *Cincinnati, New Orleans & Texas Pacific Ry. Co.* v. *Rankin*, 241 U. S. 319, 327; *New York Central & Hudson River R. R. Co.* v. *Beaham*, 242 U. S. 148, 151.

But it is urged the contract of limitation was void because it is shown to have been illegal, that is, repugnant to the official tariff sheets filed with the Interstate Commerce Commission which, properly authenticated, were offered in evidence. But, turning to the official tariff sheets as found in the record, it is apparent that the terms of the contract are substantially identical with the statement in the tariff sheets as to the rates concerning the shipment of livestock and indeed, comparing the two, it is impossible to reach any other conclusion than that the

provisions of the contract were copied from the provisions of the tariff sheets. In substance the argument rests upon the assumption which we have already disposed of, that is, that the contract only provided for a limitation in the event of a declaration of value by the shipper and left no room for such a limitation where the shipper obtained the lowest possible rate by making no valuation and accepting the primary limit of value stated in the contract by the carrier. The argument as we are now considering it, however, proceeds not solely upon the text of the contract and the tariff sheets concerning the carriage of livestock but additionally upon the effect produced upon such provisions by clauses in the tariff sheets relating to the valuation of merchandise. The argument is this: That as in the rate schedules dealing with merchandise valuation it is expressly provided that the primary limitation of value fixed shall be the measure of the charge and liability unless another and higher valuation be declared, such rule ought not to be deduced from the provisions as to livestock valuation where that stipulation is not found in express terms, and hence that in the absence of an express valuation in a livestock contract by a shipper no primary limitation on value is possible and thus the rule of the lesser the rate the greater the responsibility would necessarily in the case of livestock come to pass. Incongruous as this result would be, it is said that it should be applied since in the rate sheet concerning merchandise it is declared in paragraph $d$ that "These charges must not be applied to Live Animals, Live Birds or Live Stock (see paragraph $g$)," that is, the livestock paragraph. But to give to the clause the import claimed for it would be to cause it to accomplish the very result which it was obviously intended to prevent, that is, the control or modification of the charges contained in livestock clauses by the provisions as to merchandise charges. Indeed the complete answer to the proposition is the one which we

have previously pointed out in considering the argument in another form of statement, that to accede to it would require a plain disregard of the fixing of a primary valuation by the terms of the contract and the sanction of the right to do so found in the express words of the rate sheets.

Finally it is said that the right to limit ought not to be recognized in the presence of a controversy and conflicting tendencies of proof as to whether the limitation of liability was called to the attention of the shipper and, if one aspect be accepted, of the possibility that the contract was signed by the shipper in ignorance of the clause. But here again the contention but overlooks the very foundation upon which the principle settled by the adjudged cases rests and disregards the express ruling in some of them that the effect of a contract made and signed by a shipper which is lawful from the point of view of the established rate sheets may not be avoided by the suggestion that by neglect or inattention the contract which was entered into was never read. *Cincinnati, New Orleans & Texas Pacific Ry. Co.* v. *Rankin,* 241 U. S. 319; *New York Central & Hudson River R. R. Co.* v. *Beaham,* 242 U. S. 148, 151.

As from what we have said it follows that the shipper should not have been permitted, after obtaining the lowest possible rate based upon a valuation to which his right of recovery in case of loss was limited, to recover upon the happening of the loss an amount wholly disproportionate and inconsistent with the rate paid contrary to the express terms of the contract, it results that the judgment below must be and it is reversed and the case remanded for further proceedings not inconsistent with this opinion.

*And it is so ordered.*