[Civ. No. 9627. Fourth Dist., Div. Two. Feb. 17, 1971.]

RAYMOND BAUER et al., Plaintiffs and Appellants, v.
HARRIS D. JACKSON et al., Defendants and Respondents.

## Counsel

Jones & Weldon, Samuel Schekman and Leonard Sacks for Plaintiffs and Appellants.

Thompson & Colegate, Bruce Morgan, Henry F. Walker and Abe Mutchnik for Defendants and Respondents.

## Opinion

**TAMURA, J.**—Plaintiffs engaged the services of defendant Jack Farnell, doing business as Los Angeles Turf Express, to transport six race horses from the Pomona Fair Grounds in Los Angeles County to Phoenix, Arizona. En route to Phoenix the truck transporting the horses collided

with a vehicle operated by a Mrs. Kyles. Plaintiffs brought the present action against Farnell, his truck driver (Jackson), Mrs. Kyles, and a passenger in Mrs. Kyles' vehicle to recover damages for injuries allegedly suffered by the horses as a proximate result of the collision.

Defendants Farnell and Jackson interposed a special defense alleging that under the terms of the shipping contract their liability was limited to a declared value of $200 per horse. This defense was severed from other issues and, over plaintiffs' objection, tried by the court without a jury. The court determined that plaintiffs were bound as a matter of law by the contractual provisions limiting the carrier's liability and that consequently recovery against Farnell and Jackson could in no event exceed $200 per horse.

The remainder of the trial was bifurcated and the liability issue was tried to a jury. The parties tried the issue on the assumption that plaintiffs had the burden of proving that damage to the shipment was caused by the negligence of the defendants. Plaintiffs introduced portions of Mrs. Kyles' deposition and brief testimony from an "accident reconstruction expert." The evidence revealed the following: The shipment of horses left the Pomona Fair Grounds in a Los Angeles Turf Express truck on the night of October 3, 1965. The accident occurred on Interstate Highway 10 between Blythe, California, and Parker, Arizona, at about 1:30 a.m. on October 4. Interstate 10 was a two-lane paved highway with a four-foot shoulder on each side. Mrs. Kyles was westbound en route to Los Angeles from Parker, Arizona. As she approached a bridge which spanned a wash, she saw an oncoming truck veer across the center line as it crossed the bridge and then attempt to return to its lane. She moved over to the right side of her lane as far as possible but as she crossed the bridge her vehicle was struck by the rear of the truck. There had been no intervening vehicles for about one and one-half miles. There was some confusion in Mrs. Kyles' testimony as to whether the headlights on her car were on low beam; at one point she testified she lowered her lights about a mile before the accident, but at another point testified that she lowered her headlights when she first observed the truck as it was about to cross the bridge.

On the foregoing evidence plaintiffs rested. All defendants moved for a nonsuit. The court granted the motion as to Mrs. Kyles and the occupant of her vehicle, but, after permitting plaintiffs to reopen to introduce additional evidence, denied the motion as to defendants Farnell and Jackson. The defense thereupon rested without putting on any evidence. *Plaintiffs moved* for a directed verdict contending that the doctrine of res ipsa loquitur was applicable and that, absent an explanation from de-

fendants as to the cause of the accident, the carrier's liability was established as a matter of law. The motion was denied and the cause was submitted to the jury. Following a defense verdict, plaintiffs unsuccessfully moved for a judgment notwithstanding the verdict and for a new trial.

The present appeal only concerns the judgment in favor of defendants Farnell and Jackson.[1]

Plaintiffs' principal contentions are: (1) The court erred in denying them a jury trial on the question whether they were bound by the terms of the shipping contract limiting the carrier's liability and (2) under applicable federal law pertaining to interstate motor common carriers, the evidence adduced on the liability issue established defendants' liability as a matter of law.

Defendants not only contend that the court correctly decided the special defense, they urge: (1) plaintiffs, having elected to try the liability issue on the theory of common law negligence, are estopped from asserting for the first time on appeal that the defendants were liable, as a common carrier, without fault; and (2) in any event, where shipment of livestock is involved, the burden is on the shipper to prove that injury to the animals occurred through the carrier's negligence. On the foregoing premises, defendants urge that plaintiffs' failure to prevail on the liability issue rendered the correctness of the court's ruling on the special defense academic.

The crucial issues, therefore, are: (1) Whether the court erred in ruling as a matter of law that the shipping contract effectively limited plaintiffs' recovery to $200 per horse, and (2) if so, whether the error requires reversal of the judgment. From the analysis which follows we have concluded that both issues must be answered in the affirmative.

---

[1]In their opening brief plaintiffs assert they are appealing from the judgment in favor of defendants Farnell and Jackson and also from "the judgment of the nonsuit" in favor of defendant Kyles. However, the notice of appeal merely states that an appeal is being taken "from the judgment entered in this action against the plaintiffs and in favor of the defendants." Moreover, the record does not contain "a judgment of nonsuit"; it merely reflects a clerk's minute entry of an order granting the motion for nonsuit as to Mrs. Kyles and the occupant of her vehicle. An unsigned clerk's minute entry showing that a motion for nonsuit has been granted is not an appealable order. (*Rios* v. *Torvald Klaveness,* 2 Cal.App.3d 1077, 1079 [83 Cal.Rptr. 150]; *Graski* v. *Clothier,* 273 Cal.App.2d 605, 606 [78 Cal.Rptr. 447]; *Adohr Milk Farms, Inc.* v. *Love,* 255 Cal.App.2d 366, 369 [63 Cal.Rptr. 123]; *Palazzi* v. *Air Cargo Terminals, Inc.,* 244 Cal.App.2d 190, 192 [52 Cal.Rptr. 817].) Consequently, insofar as the appeal purports to be from the minute order granting the motion for nonsuit, it is premature and must be dismissed. (*Adohr Milk Farms, Inc.* v. *Love, supra,* p. 369.)

I

In the court below plaintiffs demanded a jury trial on the special defense on the ground it presented factual as well as legal issues. The court, over plaintiffs' objections, decided the special defense as a matter of law. In so doing, the court erred.

The pertinent evidence on the trial of the special defense consisted of depositions of Mr. Vizcaya (plaintiffs' horse trainer) and of Mr. Fator (defendants' representative), together with brief testimony from defendant Farnell.

In his deposition Mr. Vizcaya testified: Several days before October 3 he made arrangements through Mr. Fator to have Los Angeles Turf Express transport the horses to Phoenix; there was no discussion concerning value, limitations on liability, or rates, other than the fact that the charge would be $50 per horse; defendants' truck arrived at the Pomona Fair Grounds about 9 p.m. on October 3; after the animals were loaded on the truck—a process which took about 45 minutes—defendants' driver asked him (Vizcaya) to sign a document; since the truck was about to depart, he did not have an opportunity to read the document; he did not know what he was signing and neither knew nor was told that the document contained a declaration of value for the horses and provisions limiting the carrier's liability; and he was not given a copy of the shipping document. On cross-examination he testified he had previously shipped horses by Los Angeles Turf Express.

Mr. Fator testified: Mr. Vizcaya contacted him two or three days before October 3 to arrange for the shipment; there was no discussion concerning value or rates other than that the charge would be a flat $50 per horse; on the afternoon of October 3 he (Fator) filled out the shipping document and inserted in a space provided the figure "$200" as the declared value of each animal; he signed the contract and gave it to the driver with instructions to have the shipper sign it; it was his (Fator's) practice to insert the figure $200 as the declared value of horses in all contracts for shipment of horses by Los Angeles Turf Express unless the shipper requested a higher valuation.

Defendant Farnell testified he published and filed a tariff schedule with the Interstate Commerce Commission and had been issued a rate order authorizing the establishment and maintenance of rates dependent upon declared value of the shipments. Certified copies of the tariff schedule and rate orders were introduced into evidence. Farnell admitted that plaintiffs were not furnished a copy of the shipping document until after the accident had occurred.

The printed shipping contract signed by Mr. Vizcaya contained a recitation that the shipper, before delivering the animals to the carrier, demanded to be advised of the rates to be charged, was advised by the carrier that the rates depended upon value declared by the shipper, and was offered a choice of rates dependent upon value in accordance with the rate schedule set out in the contract. The document contained a box in which appears the following statement: "The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding $_____per animal on horses and not exceeding $_____for the personal effects of each attendant." Mr. Fator inserted in the blank spaces the figure "200" as the value per animal and "50" as the value of the personal effects.

Section 5 of the shipping contract provided in pertinent part: ". . . The Shipper hereby releases and discharges the Company from all liability for delay, injuries to or loss of said animals and paraphernalia, from any cause whatever, unless such delays, injury or loss shall be caused by the Company or by the negligence of its agents or employees, and in such event the Company shall be liable only to the extent of actual damage sustained, but in no event to an amount for an animal or paraphernalia in excess of its value as declared by this contract. . . ."

Section 8 of the contract provided in pertinent part: "The Shipper agrees that as a condition precedent to recovery hereunder for loss or injury or damage to or delay in delivery of this shipment, such loss, injury, damage or delay shall be proved by the Shipper to have been caused by negligence of the carrier, . . ."

■ The shipment in question being interstate, the rights and liabilities of the parties must be governed by applicable federal statutes as interpreted by federal tribunals. (*Missouri P. R. Co.* v. *Elmore & Stahl,* 377 U.S. 134, 137 [12 L.Ed.2d 194, 197, 84 S.Ct. 1142, 1144]; *Adams Express Co.* v. *Croninger,* 226 U.S. 491 [57 L.Ed. 314, 33 S.Ct. 148]; *New York Cent. R. R. Co.* v. *F. H. Buck Co.,* 2 Cal.2d 384, 389 [41 P.2d 547]; *Franklin* v. *Southern Pac. Co.,* 203 Cal. 680 [265 P. 936, 59 A.L.R. 118].)

Interstate motor common carriers are expressly made subject to the provisions of section 20(11), Part I, of the Interstate Commerce Act, commonly known as the Carmack Amendment. (49 U.S.C. § 319.)[2]

---

[2]Section 319 of 49 U.S.C. provides: "The provisions of section 20(11) and (12) of this title, together with such other provisions of chapter 1 of this title (including penalties) as may be necessary for the enforcement of such provisions, shall apply with respect to common carriers by motor vehicle with like force and effect as in the case of those persons to which such provisions are specifically applicable."

The pertinent provisions of section 20(11) provide that any common carrier subject to its provisions ". . . receiving property for transportation from a point in one State . . . to a point in another State, . . . shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it . . . and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier, . . . from the liability imposed; and any such common carrier, . . . so receiving property for transportation . . . shall be liable to the lawful holder of said receipt or bill of lading . . . for the full actual loss, damage, or injury to such property caused by it . . . , notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is declared to be unlawful and void . . ."

A proviso qualifies the prohibition against limitations of liability ". . . to property, except ordinary livestock, received for transportation concerning which the carrier shall have been or shall be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released . . . ; and any tariff schedule which may be filed with the commission pursuant to such order shall contain specific reference thereto and may establish rates varying with the value so declared and agreed upon; and the commission is empowered to make such order in cases where rates dependent upon and varying with declared or agreed values would, in its opinion, be just and reasonable under the circumstances and conditions surrounding the transportation. The term 'ordinary livestock' shall include all cattle, swine, sheep, goats, horses, and mules, except such as are chiefly valuable for breeding, racing, show purposes, or other special uses . . . ."

The statute codifies "the common-law rule that a carrier, though not an absolute insurer, is liable for damage to goods transported by it unless it can show that the damage was caused by '(a) the Act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods.'" (*Missouri P. R. Co.* v. *Elmore & Stahl, supra,* 377 U.S. 134, 137 [12 L.Ed.2d 194, 197, 84 S.Ct. 1142, 1144]; *Secretary of Agriculture* v. *United States,* 350 U.S.

162, 165, fn. 9 [100 L.Ed. 173, 178, 76 S.Ct. 244, 247]; *Chesapeake & O. R. Co.* v. *Thompson Mfg. Co.,* 270 U.S. 416, 421-422 [70 L.Ed. 659, 660-661, 46 S.Ct. 318, 319]) and makes unlawful and void any provision in any contract, bill of lading, receipt, tariff schedule or rule or regulation purporting to limit the carrier's statutory liability. (*Missouri P. R. Co.* v. *Elmore & Stahl, supra,* 377 U.S. 134, 137-138 [12 L.Ed.2d 194, 197-198, 84 S.Ct. 1142, 1144]; *Union Pac. R. R. Co.* v. *Burke,* 255 U.S. 317, 321 [65 L.Ed. 656, 659, 41 S.Ct. 283, 284]; 6A Corbin, Contracts (1962) pp. 592-593.)

The statutory proviso permitting a carrier to limit its liability to a declared or agreed value similarly codifies a distinction recognized at common law between a contract exempting a carrier from liability for negligence and one whereby, in consideration of a lesser rate, the shipper agreed to a value by which the carrier's liability was to be measured in the event of loss or damage to shipment. "[S]uch contracts, where the value so fixed was reasonable and the agreement was freely and fairly entered into by the shipper, were not deemed to be subject to the common law prohibition against contracts exempting a carrier from liability for negligence." (*Muelder* v. *Western Greyhound Lines,* 8 Cal.App.3d 319, 324-325 [87 Cal.Rptr. 297]; *Adams Express Co.* v. *Croninger, supra,* 226 U.S. 491, 509-510 [57 L.Ed. 314, 321-322, 33 S.Ct. 148, 153]; *Hart* v. *Pennsylvania R. R. Co.,* 112 U.S. 331, 340-341 [28 L.Ed. 717, 720-721, 5 S.Ct. 151, 155-156].) ■ However, both under common law and the statute a choice of rates with an opportunity to purchase greater protection by paying a higher rate is essential to the validity of such arrangements. (*Muelder* v. *Western Greyhound Lines, supra,* 8 Cal. App.3d 319, 325; *Union Pac. R. R. Co.* v. *Burke, supra,* 255 U.S. 317, 321-323 [65 L.Ed. 656, 659-660, 41 S.Ct. 283]; *New York, N.H. & Hartford R. R. Co.* v. *Northnagle,* 346 U.S. 128, 135-136 [97 L.Ed. 1500, 1507, 73 S.Ct. 986, 990-991]; *Mitchell* v. *Union Pac. R. R. Co.,* 242 F.2d 598, 604; *Caten* v. *Salt City Movers & Storage Co.,* 149 F.2d 428, 432; *Toyo Kisen Kabushiki Kaisha* v. *Willits & Co.,* 17 F.2d 762, 764; *Franklin* v. *Southern Pac. Co., supra,* 203 Cal. 680, 689; 6A Corbin, Contracts (1962), *supra,* p. 595.)

Recently, in *Muelder* v. *Western Greyhound Lines, supra,* 8 Cal. App.3d 319, we discussed and analyzed in some detail the validity of agreed or declared value limitations on a carrier's liability. For reasons there stated we concluded that recent federal decisions, particularly (*New York, N.H. & Hartford R. R. Co.* v. *Northnagle, supra,* 346 U.S. 128 [97 L.Ed. 1500, 73 S.Ct. 986]; *Chandler* v. *Aero Mayflower Transit Co.* (4th Cir. 1967) 374 F.2d 129; and *Mitchell* v. *Union Pac. R. R. Co., supra,* 242 F.2d 598), indicate a retreat from the harsh rule

enunciated in earlier cases that a shipper is conclusively presumed to have contracted with knowledge of the terms of limitations on liability contained in bills of lading, baggage tickets, shipping documents and tariff schedules and is bound thereby whether or not he had knowledge of them. (*Muelder* v. *Western Greyhound Lines, supra,* pp. 325-328.) ■ We further concluded that, under prevailing federal case law, principles of contract law (and more particularly principles pertaining to adhesion contracts) should be applied in determining whether there has been a valid valuation agreement. (*Muelder* v. *Western Greyhound Lines, supra,* 8 Cal.App.3d 319, 326-329, 332-333.)

The current federal law is exemplified by *Chandler* v. *Aero Mayflower Transit Co., supra,* 374 F.2d 129. In that case an interstate shipment of household goods was lost by fire through the probable negligence of the carrier. The trial court directed a verdict in favor of the carrier limiting its liability to a released value of 30 cents per pound in accordance with the provisions of the bill of lading and order for service. The bill of lading was not signed until the goods were in transit; the evidence was conflicting whether the order for service was signed before shipment. The shipper testified he signed the bill of lading on the representation it was an inventory of the goods. There was evidence that the carrier's agent might have misled the shipper into believing that the 30-cent-per-pound limitation did not apply to loss through negligence. The Fourth Circuit Court of Appeal held that the "released" value was effective only if the shipper's assent thereto was valid and he had been given a fair opportunity to purchase greater protection by paying a higher rate in accordance with the tariff schedule. In analyzing the meaning of the statutory phrase, "value declared in writing . . . or agreed upon in writing . . .", as used in section 20(11) of the Interstate Commerce Act, the court stated: "Congress no doubt used these words to indicate that a shipper should agree in the same sense that one agrees or assents to enter into a contractual obligation. [Citations.] And such assent is effective only if given after 'a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge . . . .' [Citations.]

". . . . . . . . . . . . . . . .

"In cases where, as in the instant controversy, questions of mistake and fraud are raised in connection with the formation of contracts limiting the liability of a common carrier, relevant circumstances and policies call for a not so strict application of pertinent principles of contract law to afford reasonable protection to the shipper. This is so because arrangements limiting liability contravene a strong public policy expressed in the common law [fn. omitted] [,] come within a carefully defined excep-

tion to the general thrust of Section 20(11) of the Interstate Commerce Act placing on the carrier absolute liability for damage, [fn. omitted] and are in operation attended by characteristics of an adhesion contract. [fn. omitted.]"

The court held that under the evidence, the shipper was not precluded, as a matter of law, from attacking the validity of his assent to the terms of the limitation of liability contained in the documents bearing his signature. It remanded the case with directions to submit to the jury (1) the question whether the shipper knew when he signed the documents that he was signing a contract rather than copies of inventory sheets and (2) whether, if he believed they were inventory sheets, whether he acted as a person of ordinary prudence would have acted under the circumstances in failing to read the documents. The reviewing court further directed the trial court to consider permitting the shipper to amend his pleadings to raise the additional question whether reasonable notice had been given by the carrier of a choice of a higher rate for greater protection.

In *Mitchell* v. *Union Pac. R. R. Co., supra,* 242 F.2d 598, the court reversed a summary judgment in favor of the carrier limiting plaintiff's recovery to the released value of $25 for the loss of a valuable show dog. There was evidence that although the shipper's wife signed a "valuation slip" and placed on it the figure $25, she did so at the urgent insistence of the baggage clerk without reading the document. The court reversed the judgment. It held that the shipper was entitled to a trial on the merits on the validity of his assent to the limitation of the carrier's liability.

 Under the principles enunciated in the foregoing cases, the court erred in ruling that the shipper in the instant case was bound, as a matter of law, by the provisions of the shipping contract limiting the carrier's liability.

The fact that plaintiffs' agent admittedly signed the contract did not preclude plaintiffs from attacking the validity of his assent to those provisions. There are older decisions declaring that a shipper who signs a printed shipping document containing a provision limiting the carrier's liability, when such limitation on liability is authorized by the published tariff schedule, may not avoid its effect on the ground he failed to read the document. (E.g., *American Express Co.* v. *United States Horse Shoe Co.* (1916) 244 U.S. 58, 62-63 [61 L.Ed. 990, 993-994, 37 S.Ct. 595, 597]; *Cincinnati, N. O. & T. P. R. Co.* v. *Rankin* (1916) 241 U.S. 319, 327-328 [60 L.Ed. 1022, 1026, 36 S.Ct. 555, 558]; see *N. Y. C. & H. R. R. Co.* v. *Beaham* (1916) 242 U.S. 148, 151 [61 L.Ed. 210, 216, 37 S.Ct. 43].) Though emanating from the high court, the proposition

so stated can no longer be blindly followed. Those cases were decided more than 50 years ago, long before judicial acceptance of the legal concepts pertaining to contracts of adhesion. ■ Ordinarily when a person with capacity of reading and understanding an instrument signs it, he may not, in the absence of fraud, imposition or excusable neglect, avoid its terms on the ground he failed to read it before signing it. (*Smith* v. *Occidental etc. Steamship Co.,* 99 Cal. 462, 471 [34 P. 84]; *Oakland Bank of Commerce* v. *Washington,* 6 Cal.App.3d 793, 800 [86 Cal.Rptr. 276]; *Currin* v. *Currin,* 125 Cal.App.2d 644, 653 [271 P.2d 61]; *Nichols* v. *Hitchcock Motor Co.,* 22 Cal.App.2d 151, 155 [70 P.2d 654].) However, with respect to standardized adhesion contracts between parties of unequal bargaining strength, exclusionary clauses and provisions limiting liability have been held to be ineffective in the absence of "plain and clear notification to the public" and "an *understanding consent.*" (See *Steven* v. *Fidelity & Casualty Co.,* 58 Cal.2d 862, 883 [27 Cal.Rptr. 172, 377 P.2d 284].) ■ Standardized bills of lading and shipping documents have been held to be adhesion type contracts. (*Chandler* v. *Aero Mayflower Transit Co., supra,* 374 F.2d 129, 135-136; *Steven* v. *Fidelity & Casualty Co., supra,* p. 881.)

■ In the present case the evidence was uncontradicted that in accordance with his usual practice the carrier's agent inserted in the shipping contract a "declared value" of $200 per horse without discussing value or choice of rates with the shipper's agent. The shipper's agent testified he had no opportunity to read the document because it was not handed to him until after the horses had been loaded and the truck was ready to leave. An inference can be reasonably drawn that he thought he was merely signing a delivery receipt. He testified he was neither apprised of the fact that the contract limited recovery for loss or damage to $200 per horse nor that, in order to recover, the shipper would have the burden of proving that damage to the shipment occurred through the carrier's negligence.

On the foregoing evidence, the question of whether the shipper's agent's failure to read the contract and take notice of its provisions limiting the carrier's liability constituted excusable neglect presented factual issues. (*Chandler* v. *Aero Mayflower Transit Co., supra,* 374 F.2d 129, 136-137; *Mitchell* v. *Union Pac. R. R. Co., supra,* 242 F.2d 598, 604.)

Moreover, the evidence presented a factual issue as to whether the carrier had given reasonable notice of the availability of a choice of rates based upon valuation. While the recital in the shipping contract that a choice of rates was offered may be deemed "prima facie evidence" of that fact (see *Cincinnati, N. O. & T. P. R. Co.* v. *Rankin, supra,* 241

U.S. 319, 328 [60 L.Ed. 1022, 1026, 36 S.Ct. 555, 558]), plaintiffs were not bound by the recital as a matter of law. As the court in *Chandler* v. *Aero Mayflower Transit Co., supra,* 374 F.2d 129, stated at page 137: "Regardless of whether there may have been an agreement in writing, signed or otherwise, we think it would be unavailing to limit liability unless the shipper had been given reasonable notice by the carrier that he actually had a choice of 'higher or lower liability by paying a correspondingly greater or lesser charge.' New York, N. H. & H. R. R. v. Northnagle, 346 U.S. 128, 135, 73 S.Ct. 986, 990 (1953). Reasonable notice is necessary to provide the shipper with a genuine 'opportunity to choose between higher and lower rates based upon valuation . . . .' Caten v. Salt Lake [*sic*] City Movers & Storage Co., 149 F.2d 428, 432 (2d Cir. 1945)."

We conclude that the special defense presented substantial factual issues pertaining (1) to the validity of plaintiffs' assent to the contractual limitations on liability and (2) to the question whether the carrier had given the shipper reasonable notice, either actual or constructive, of the availability of a choice of rates dependent upon valuation. Plaintiffs were entitled to have those issues tried to a jury under appropriate instructions.

## II

We turn to the question whether the erroneous ruling on the special defense requires reversal. ■■■ Defendants contend that plaintiffs' failure to prevail on the liability issue rendered the validity and enforceability of the contractual limitation on liability moot. The contention is devoid of merit.

The court's erroneous ruling on the special defense necessarily infected the trial of the entire lawsuit; the theory upon which the liability issue was to be tried turned upon the way in which the special defense was decided. In addition to a monetary limitation of $200 per horse, the contract restricted the carrier's liability to loss or damage to the shipment arising out of the carrier's negligence. The contract provided that "as a condition precedent to recovery hereunder for loss or injury or damage to or delay in delivery of this shipment, such loss, injury, damage or delay shall be proved by the Shipper to have been caused by negligence of the carrier . . . ." When the court upheld the contractual provisions limiting the carrier's liability, plaintiffs were perforce compelled to proceed with the liability issue on the premise they had the burden of proving that injury to the animals was the proximate result of defendants' negligence.

Had it been determined that plaintiffs were not bound by the contractual provisions limiting defendants' liability, it would not have been

incumbent upon plaintiffs to prove that damage occurred through defendants' negligence. Arrangements limiting an interstate carrier's liability come within a narrowly defined exception to the basic provisions of section 20(11) of the Interstate Commerce Act making carriers liable for all damage to shipments. Where an agreement purporting to limit a carrier's liability to a declared or agreed value is determined to be unenforceable, the carrier is subject to common law liability. (*Union Pac. R. R. Co. v. Burke, supra,* 255 U.S. 317, 322-323 [65 L.Ed. 656, 659-660, 41 S.Ct. 283, 284].) ■ ". . . [U]nder federal law, in an action to recover from a carrier for damage to a shipment, the shipper establishes his prima facie case when he shows delivery in good condition, arrival in damaged condition, and the amount of damages. Thereupon, the burden of proof is upon the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability." (*Missouri P. R. & T. P. Co. v. Elmore & Stahl, supra,* 377 U.S. 134, 138 [12 L.Ed.2d 194, 198, 84 S.Ct. 1142].)

■ The evidence adduced at the liability trial revealed the horses were injured as a result of a collision between defendants' tractor-trailer and a vehicle operated with apparent due care by Mrs. Kyles. On that showing, absent a valid contract limiting the carrier's liability, plaintiffs would have been entitled to prevail on the liability issue unless defendants showed that injury to the animals resulted from one of the excepted causes. A common carrier is liable without regard to the exercise of due care, even though damage or loss be occasioned by the act of third persons. (*Missouri P. R. Co. v. Elmore & Stahl, supra,* p. 139, fn. 9 [12 L.Ed.2d p. 198]; *Commodity Credit Corporation v. Norton,* 167 F.2d 161, 164-165.)

■ Defendants urge that a different rule governs shipment of livestock. The cases, however, make no distinction with respect to the liability of a carrier in the shipment of livestock unless the loss or injury occurred through the inherent vice or propensity of the animals. Where the loss is unconnected with such characteristics, "the ordinary relation between the shipper and the carrier is not affected by the fact that the property transported is livestock." (13 C.J.S., *Carriers,* § 79, p. 157; *Galveston, H. & S. A. Ry. Co. v. Neville,* 100 Tex.Crim.Rep. 406 [272 S.W. 597, 600]; *Sullivan v. American Ry. Express Co.,* 211 Mo.App. 123 [245 S.W. 375, 376; *Brower v. Chicago, R. I. & P. Ry. Co.,* 218 Iowa 317 [252 N.W. 755, 757]; *Swiney v. American Express Co.,* 144 Iowa 342 [115 N.W. 212, 213, 122 N.W. 957]; see cases collected in Annotation, 106 A.L.R. 1156, 1166-1169.)

The common law rule defining a carrier's liability with respect to shipment of livestock was summarized as follows in *Swiney v. American Express Co., supra,* 115 N.W. 212, 213-214: "The position taken by

counsel seems to involve the thought that to sustain a recovery in cases of this character the shipper is bound to support his claim by an affirmative showing of negligence in the carrier. This, we think is not the rule which has heretofore been recognized and applied by this court, and is opposed to the prevailing doctrine approved by the courts of this country in general. The ordinary liability of a common carrier is that of an insurer against all risks incident to transportation, save such as result from the act of God or public enemy; and proof of the delivery of the goods to the carrier in sound condition and of their redelivery at the end of the route in damaged condition makes a sufficient case to sustain a recovery of damages by the shipper. [Citations.] It has sometimes been suggested that this rule has no application to the shipment of livestock, but the great weight of authority is against the recognition of such exception. [Citations.] There is, however, a well-recognized modification of the carrier's liability which, while applicable to the shipment of goods in general, finds its most frequent illustration in the shipment of live animals. This feature of the rule may be stated as follows: That while a carrier, whether negligent or otherwise, is generally liable as an insurer for loss and damage occurring to goods while in its hands for transportation, it is not liable in the absence of negligence on its part for any loss or damage caused by or resulting from the perishability or inherent weakness or vice in the subject of shipment."

For the foregoing reasons, the correctness of the court's ruling on the special defense was not rendered moot by the jury verdict for defendants on the liability issue. When the court decided the special defense in favor of defendants, it virtually decided the entire lawsuit.

Judgment is reversed. Purported appeal from the order granting nonsuit is dismissed.

Gardner, P. J., and Kaufman, J., concurred.