[Civ. No. 47011. First Dist., Div. Three. Mar. 25, 1980.]

CORINA RAMIREZ, a Minor, etc., et al.,
Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
SAN JOSE HOSPITAL AND HEALTH CENTER,
Real Party in Interest.

748

■■■■■■■■■■■■■■■■

COUNSEL

Arne Werchick and Werchick & Werchick for Petitioners.

No appearance for Respondent.

Archie S. Robinson and Wines, Robinson, Wood & Anderson for Real Party in Interest.

OPINION

WHITE, P. J.—■■■ The question raised by this petition is whether a patient who has signed an admission agreement which complies with Code of Civil Procedure section 1295 (hereinafter section 1295) and which requires arbitration of all medical malpractice claims may resist arbitration on the ground that the agreement was not entered into knowingly and voluntarily. We conclude that the statute must be read to permit such a challenge in order to avoid constitutional defects. The trial court ordered arbitration without a clear determination of petitioners' claim. Therefore, we will issue the writ to annul the trial court order and permit reconsideration.

On October 19, 1977, Ms. Ramirez arranged to have her pediatrician examine Corina at defendant hospital. Corina, then nine months old, had had an eight-day history·of elevated temperature, pulse, and respiration rate. At the emergency room, before her daughter was examined, Ms. Ramirez was handed a Spanish version of the arbitration agreement specified in section 1295.[1]

---

[1]Section 1295 provides in pertinent part: "(a) Any contract for medical services which contains a provision for arbitration of any dispute as to professional negligence of a health care provider shall have such provision as the first article of the contract and shall be expressed in the following language: 'It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration.'
"(b) Immediately before the signature line provided for the individual contracting for the medical services must appear the following in at least 10-point bold red type: "'NOTICE: BY SIGNING THIS CONTRACT YOU ARE AGREEING TO HAVE ANY IS-

■■■■■■■

Ms. Barbara Meninger, the nurse who handled the admission of Corina Ramirez, stated in her declaration that she can speak Spanish although she understands it better than she can speak it. She did not say, however, whether she spoke Spanish to Ms. Ramirez. There were other people in the hospital available who did speak Spanish.

Nurse Meninger asked Ms. Ramirez to read the agreement. Although she did not know whether Ms. Ramirez read the agreement, Ms. Ramirez looked at it before signing it. Nurse Meninger made no attempt to explain the agreement. Nurse Meninger did state, however, that she did not tell Ms. Ramirez that the agreement had to be signed before her baby would be treated. Nurse Meninger stated that a copy of the agreement was given to Ms. Ramirez.

In her declaration, Ms. Ramirez stated that a hospital employee who spoke very little Spanish handed her a piece of paper and told her to sign it, where the "X" was located. No attempt was made to explain the paper or its meaning. Ms. Ramirez, worried about her daughter and believing she had to sign all the papers handed to her before her child would be examined, signed the arbitration agreement without reading it. She cannot remember whether she was given a copy of the agreement, but she has never read it.

Due to a misunderstanding, the pediatrician did not meet Ms. Ramirez and her daughter at the defendant hospital. Corina was examined by an emergency room physician who sent Corina home without diagnosing her illness. Corina had meningitis and is now seeking damages for blindness and paralysis allegedly due to the defendant's negligent failure to make a timely diagnosis.

Shortly after her action was filed, the defendants filed a petition to compel arbitration. The trial court granted the petition, stating in its or-

SUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL. SEE ARTICLE 1 OF THIS CONTRACT.'

"(c) Once signed, such a contract governs all subsequent open-book account transactions for medical services for which the contract was signed until or unless rescinded by written notice within 30 days of signature. Written notice of such rescission may be given by a guardian or conservator of the patient if the patient is incapacitated or a minor.

"(d) Where the contract is one for medical services to a minor, it shall not be subject to disaffirmance if signed by the minor's parent or legal guardian.

"(e) Such a contract is not a contract of adhesion, nor unconscionable nor otherwise improper, where it complies with subdivisions (a), (b) and (c) of this section."

der: "The arbitration agreement was presented to the mother of the minor plaintiff by a Spanish-speaking nurse in a Spanish language version which complies with the English language warning required by CCP 1295. There was never the slightest question that the patient was the child, and the mother was signing for the child. Although San Jose Hospital is not named in the printed portion, the nurse signed for the hospital and gave the mother a copy. That the mother was probably more concerned about treatment for her ill baby than the language of the document should not detract from the remedial and beneficial aspect of the legislative policy set forth in CCP 1295. The situation presented is that the baby is the patient, the hospital is providing treatment, the mother signs for the baby, and the contract contains appropriate warnings. CCP 1295 has removed the aura of adhesion from such contracts and is a legislative mandate for a new policy to direct these disputes out of the courts to a more appropriate forum. CCP 1295 is a product of social upheaval which, without limiting liability for tortious acts, regards the court-jury system for resolution of medical issues as unfair, etc., and the arbitration system as fair and knowledgeable. The courts must accept the new legislation." This petition seeks writ of mandate to vacate the trial court order compelling arbitration.

Arbitration is governed by Code of Civil Procedure section 1280 et seq. ■ It is a highly favored forum for settling disputes, and courts should use every effort to enforce arbitration agreements. (*Pacific Inv. Co. v. Townsend* (1976) 58 Cal.App.3d 1, 9 [129 Cal.Rptr. 489].) Arbitration is expeditious, less costly, and lessens court congestion. (*Madden v. Kaiser Foundation Hospitals* (.1976) 17 Cal.3d 699, 706-707 [131 Cal.Rptr. 882, 552 P.2d 1178].) "A proceeding to compel arbitration is in essence a suit in equity to compel specific performance of a contract." (*Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 479 [121 Cal.Rptr. 477, 535 P.2d 341].)

The powers of the superior court to pass upon a motion to compel arbitration are delineated in section 1281.2 which provides: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner; or [¶] (b) Grounds exist for the revocation of the agree-

ment." █    Section 1281.2 requires the court to determine whether an agreement to arbitrate actually exists since a party cannot be compelled to arbitrate a matter she has not agreed to arbitrate. (*Freeman, supra,* at p. 480; *Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 355 [133 Cal.Rptr. 775, 84 A.L.R.3d 343].) If the trial court erred in its determination that there was an agreement to arbitrate, an essential jurisdictional fact was missing and hence the order compelling arbitration constituted an abuse of discretion. (*Wheeler, supra,* at p. 355.)

Prior to the passage of section 1295, it was settled that an arbitration agreement contained in a negotiated group health care contract, because it was negotiated between parties possessing parity of bargaining strength, could not be voided as to individual health plan members on adhesion contract principles. (See *Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699.) The same was not true, however, of agreements signed by individual patients ⁀in connection with admission to hospitals. In *Wheeler* v. *St. Joseph Hospital, supra,* 63 Cal.App.3d 345, the Fourth District refused to enforce an "Arbitration Option" provision contained in a hospital admission form. To signify nonagreement with the arbitration provision, a patient could either place his initials in the space provided or notify the hospital within 30 days of discharge. The plaintiff-wife stated that her husband had signed the admission form without reading it, no one at the hospital called their attention to the arbitration provision, and the plaintiffs were never provided with a copy of the agreement. The trial court ordered arbitration when Mr. Wheeler and his wife brought a medical malpractice suit. After arbitration on the merits resulted in an award for the defendants, the plaintiffs sought to vacate the award inter alia on the trial court's alleged abuse of discretion in ordering arbitration.

On appeal, the court recognized that while arbitration is favored as a method for settling disputes, it is consensual in nature. When there is no agreement to arbitrate, an essential jurisdictional fact is missing and a court abuses its discretion if it compels arbitration. To compel arbitration there must be a voluntary agreement to arbitrate which is openly and fairly entered into. (*Id.,* at p. 356.)

The court found that the hospital's "Conditions of Admission" was a contract of adhesion since it was a standardized form drafted by the hospital on a take-it-or-leave-it basis, negating any realistic choice by the plaintiffs. The enforceability of such a contract then depends upon

whether the terms are beyond the reasonable expectations of an ordinary person or are oppressive or unconscionable. This is a particular problem in the medical services context which presents distinct problems of the patients' awareness. Normally in a contract of adhesion, conspicuousness and clarity may *not* be enough. If the provision would defeat the strong expectations of the weaker party, it may be necessary to point out the provision and explain its meaning. This is especially important during admission to a hospital which is an "anxious, stressful, and frequently a traumatic experience." (*Id.*, at pp. 359-360.) In its analysis the court noted that an emergency room patient cannot be expected to read, much less understand, a broad arbitration clause. Unless advised otherwise a patient will think she has no choice but to enter her physician's hospital and sign all the forms. (*Id.*, at p. 360.) While *Madden* held that an express waiver of a jury trial is not required, it is still a valuable right which should not be deemed to be waived lightly. (*Id.*, at p. 361.) The patient should be made aware of the arbitration provision and its implications. Otherwise the patient does not have an opportunity to exercise a real choice. The court felt that: "These procedural requirements will not impose an unreasonable burden on the hospital. The hospital's admission clerk need only direct the patient's attention to the arbitration provision, request him to read it, and give him a simple explanation of its purpose and effect, including the available options. Compliance will not require the presence of the hospital's house counsel in the admission office." (*Id.*)

The *Wheeler* court acknowledged the existence of Code of Civil Procedure section 1295, but did not apply it to its case, whose facts predated the effective date of section 1295. The court made the following observation about the new section: "Code of Civil Procedure section 1295 enacted by the Legislature in 1975 to avoid some of the problems raised by this appeal *may* satisfy the requirements of awareness and understanding by requiring medical arbitration agreements to be expressed in the statutory language and form which sets forth a simple and straight-forward explanation of the meaning and effect of arbitration." (*Id.*, at p. 361, fn. 11, italics added.) We have the difficult task of determining what effect section 1295 has had upon the problems raised by *Wheeler*.

Section 1295 (quoted in pertinent part in fn. 1) prescribes the exact language to be used for an arbitration provision in a medical services contract, prescribes the form and placement of a warning notice to the

person signing the contract, and provides for rescission of the contract by written notice within 30 days of signature.  ■ ■■■■  In subdivision (e) it states: "Such a contract is not a contract of adhesion, nor unconscionable nor otherwise improper, where it complies" with the requirements as to form, language and rescission.[2]

The required language and warning make clear to anyone who reads them that the signing of the agreement waives the right to jury trial. The statute prescribes that the warning be made in at least 10-point bold red type and be placed immediately before the signature line, making every effort to insure that the patient will read the warning. The question we must answer is whether, in light of the warnings, there is any basis for a signing party's claim that she did not read the form or understand that she was agreeing to arbitrate medical malpractice disputes. Has the Legislature, by making the warnings clear, providing for later rescission of the contract, and decreeing that the contract is not a contract of adhesion, unconscionable nor otherwise improper, removed all bases for attacking the agreement?

■  "Ordinarily when a person with capacity of reading and understanding an instrument signs it, he may not, in the absence of fraud, imposition or excusable neglect, avoid its terms on the ground he failed to read it before signing it." (*Bauer* v. *Jackson* (1971) 15 Cal.App.3d 358, 370 [93 Cal.Rptr. 43]; *Madden* v. *Kaiser Foundation Hospitals, supra*, 17 Cal.3d 699, 710; *Wheeler* v. *St. Joseph Hospital, supra*, 63 Cal.App.3d 345, 359; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 89, p. 93.) This rule does not apply, however, where the contract may be properly characterized as a contract of adhesion. (See *Bauer* v. *Jackson, supra*, at p. 370.) Thus, if the Legislature's declaration that a medical services arbitration agreement in proper form is not a contract of adhesion has effectively removed that exception, petitioners could avoid arbitration only by showing "fraud, imposition or excusable neglect" and proving that Ms. Ramirez did not read the con-

---

[2]Petitioners contend that the Spanish language form Ms. Ramirez received did not comply with the form required by the statute because it used a Spanish word which translated into "incorrection" instead of into "malpractice," and because it nowhere mentioned the word "hospital" or its Spanish equivalent. Naturally, exact compliance with the statutory words was impossible if the form were to be presented in a language understandable to Ms. Ramirez. We cannot find an abuse of discretion in the trial court's conclusion that the Spanish language version complied with the English language warning requirement of section 1295. We note that for some reason the Spanish version does not advise the patient that he or she need not sign the form in order to obtain medical services, whereas the English language version does give that advice. However, the terms of the statute do not require such disclosure.

tract for one of those reasons. Absent such a showing, they would be bound by the terms of the agreement she signed.

Petitioners argue that the Legislature cannot establish a conclusive presumption that a signed arbitration agreement in proper form is not a contract of adhesion. They contend that such a presumption would clash with their rights to jury trial, which may be waived only in a "knowing, intelligent and voluntary" manner. They rely as well upon decisions which acknowledge that permanent irrebuttable presumptions have long been disfavored under the due process clauses of the Fifth and Fourteenth Amendments. (*Vlandis* v. *Kline* (1973) 412 U.S. 441 [37 L.Ed.2d 63, 93 S.Ct. 2230].)

Real party responds to these arguments by asserting that section 1295 was a legislative response to a health care crisis in California, that arbitration was viewed as a partial solution to the crisis, that public policy favors arbitration over litigation, that arbitration agreements have been upheld against due process arguments, and that such contracts are not contracts of adhesion because section 1295, subdivision (e) has so decreed. As far as real party's argument goes, it is accurate and persuasive. However, in all its particulars it assumes that the patient has knowingly and voluntarily signed the agreement or that the agreement was entered by an agent of the patient who was aware of the arbitration provision. Real party does not address the question of whether section 1295 can properly bind one who has signed the agreement under coercion or without knowledge or understanding of its provisions.

We conclude that in order to avoid constitutional infirmity section 1295 must be read as permitting a very limited species of attack by one who has signed an agreement in proper form. Our conclusion is drawn from our reading of the constitutional right to trial by jury in civil cases.

Under the federal Constitution, "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved,..." (U.S. Const., 7th Amend.) Under the California Constitution, "Trial by jury is an inviolate right and shall be secured to all, but in a civil cause three-fourths of the jury may render a verdict.... In a civil cause a jury may be waived by the consent of the parties expressed as prescribed by statute." (Cal. Const., art. I, § 16.)

The importance of the right to jury trial has been expressed in the following terms: "The right to jury trial is immemorial; it was brought from England to this country by the colonists, and it has become a part of the birthright of every free man. The right to have a trial by jury is a fundamental right in our democratic judicial system, including our federal jurisprudence. It is a right which is justly dear to the American people, and, whether guaranteed by the Constitution or provided by statute, should be jealously guarded by the courts. Any seeming curtailment of this right should be scrutinized with the utmost care." (47 Am. Jur.2d (1969) Jury, § 12, p. 635, fns. omitted; *Dorshkind* v. *Harry N. Koff Agency, Inc.* (1976) 64 Cal.App.3d 302, 307 [134 Cal.Rptr. 344].)

In *Madden* v. *Kaiser Foundation Hospitals, supra*, 17 Cal.3d 699, 712-714, the Supreme Court made clear that the civil jury trial right could be waived without compliance with the requirements of Code of Civil Procedure section 631 where it is waived by an agreement entered in advance of any pending action. The court also permitted the bargaining agent to enter an advance waiver of the jury trial rights of his principals. However, it in no way suggested that jury trial rights could be infringed by statute or could be taken away from one who unknowingly signed a document purporting to exact a waiver.

In light of the constitutional protection for the right to jury trial in civil cases, we conclude that the Legislature may not establish a conclusive presumption that one signing an agreement meeting the requirements of section 1295 has in fact consented to arbitration. We therefore read section 1295 as permitting a party to seek to show that he or she was coerced into signing or did not read the many waiver notices provided and did not realize that the agreement was an agreement to arbitrate.[3] Because of the nature of the warnings on the form, a party attacking the arbitration agreement will doubtless have a difficult time: she will have to explain how her eyes avoided the 10-point red type above the signature line; she will have to explain why she did not ask questions about what she was signing; she will have to show that no one explained the document to her or asked her to read it before signing it; and she will have to explain why she did not rescind the agreement

---

[3]Where subdivision (e) of section 1295 states that such a contract is not a contract of adhesion, nor unconscionable nor otherwise improper, we interpret it as describing the *effect* of an agreement if one is found. However, no agreement exists unless the parties signing the document act voluntarily and are aware of the nature of the document and have turned their attention to its provisions or reasonably should have turned their attention to its provisions.

within 30 days after it was signed. The trial court will then make a factual ruling on the questions of coercion and of whether the person signing the document actually knew or reasonably should have known that he or she was waiving jury trial rights and agreeing to arbitrate any medical malpractice controversy. We do not believe the trial courts will be unduly burdened by the requirement that they make such a factual determination when ruling on a petition to compel arbitration. To the extent a burden is imposed, the Constitution requires it.

We note that in some respects, the trial court's inquiry may compare to an inquiry into whether a signature was obtained through "fraud, imposition or excusable neglect," which caused a failure to read the instrument. (See *Bauer* v. *Jackson, supra,* 15 Cal.App.3d 358, 370.) However, where the arbitration agreement is signed as part of the admission procedure in an emergency room, something less than fraud or imposition would surely suffice for explaining failure to read the instrument.

As we read the trial court's order compelling arbitration, it rests upon the fact that the mother signed a document with proper warnings printed thereon. The court's language suggests that it did not resolve the conflict between the hospital's evidence and Ms. Ramirez' statements that she was told to sign the document, that she did so without reading it, that no one told her treatment could take place without her signature, and that she never read the document after leaving the hospital. If all her evidence were found to be true, she would make a strong case for an unknowing, involuntary signature on the arbitration agreement. Her greatest hurdle would be explaining why she did not read the agreement during the 30-day "cooling off" period provided by the statute.[4]

Since the trial court did not resolve the factual issues of coercion and of whether Ms. Ramirez knew or reasonably should have known what she was agreeing to (or within 30 days reasonably should have known what she had agreed to and that she had a right to rescind), we must annul the prior ruling and return the matter for redetermination.[5]

---

[4]Real party would do well to explain why the Spanish language version does not advise the patient that treatment will be given even if the patient does not agree to arbitration. The English version does so advise.

[5]In light of the posture of this case, we suggest that the trial court decide this matter upon oral testimony rather than solely upon the affidavits filed by the parties.

Let peremptory writ of mandate issue, directing the Santa Clara County Superior Court to vacate its order of February 22, 1979 compelling arbitration, and to reconsider the motion in light of the views expressed herein.

Scott, J., and Feinberg, J., concurred.

The petition of real party in interest for a hearing by the Supreme Court was denied June 25, 1980. Clark, J., was of the opinion that the petition should be granted.